NUMBER 13-98-458-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


____________________________________________________________________


TRINIDAD CONSTANCIO, III, Appellant,


v.



THE STATE OF TEXAS, Appellee.

____________________________________________________________________


On appeal from the 24th District Court of Calhoun County,

Texas.

____________________________________________________________________


O P I N I O N



Before Justices Hinojosa, Chavez, and Rodriguez


Opinion by Justice Hinojosa



 A jury found appellant, Trinidad Constancio, III, guilty of the
offense of attempted capital murder(1) and assessed his punishment at
life imprisonment and a $10,000 fine. By five points of error, appellant
contends: (1) the evidence is legally and factually insufficient to support
his conviction, (2) the evidence is legally and factually insufficient to
show he had the specific intent to kill Officer Posadas, (3) the evidence
is legally and factually insufficient to show he knew that Officer
Posadas was a peace officer acting in his official duty at the time of the
shooting, (4) the trial court erred in failing to charge the jury on the
issue of self-defense, and (5) he was denied effective assistance of
counsel. We affirm.

1. Background


 On June 10, 1997, appellant went to Jay Hubbard's ("Hubbard")
apartment looking for his estranged girlfriend Jamie Page ("Page"). 
Page and her mother, Tommi Mobley ("Mobley"), were present at the
apartment. Mobley and Page had a gun, which belonged to Mobley's
husband, for protection because they "didn't know what [appellant]
was capable of."(2) Page had the gun with her at the apartment, and she
placed it, in its gun case, on a chair under some newspapers. Appellant
demanded entrance to the apartment and was refused. Hubbard
subsequently arrived, told appellant that Page did not want to see him,
and entered the apartment. Hubbard called the police, identified himself
to the dispatcher, and at that moment appellant kicked down the door
of the apartment. Appellant ripped the phone out of the wall, struck
Hubbard with it, and threw it at Page. A fight ensued between Page,
Mobley, Hubbard, and appellant. During the melee, the gun was
knocked onto the floor. Appellant wrestled Page for the gun and gained
possession of the weapon. Appellant removed the gun from the case
and struck Page and Hubbard in the head with the gun. He told Page
and Mobley to get on the ground execution style,(3) pointed the gun, and
told them he was going to kill them.

 Officers Posadas and Hernandez then appeared on the scene. As
the officers approached the residence, Officer Posadas pushed the door
open, and announced that he was a police officer. Appellant reached
out the door, pointed the gun approximately four to six inches from
Officer Posadas's face and fired the weapon. Hernandez and Posadas
returned fire. During the exchange of gunfire, appellant was shot in the
wrist, Hubbard was killed by a police bullet, and Officer Posadas
received a life-threatening wound to the head from the initial bullet fired
by appellant. Officer Posadas was taken to the hospital, and appellant
was arrested and taken into custody.

2. Sufficiency of the Evidence


 In his first point of error, appellant complains the evidence is
legally and factually insufficient to support his conviction for attempted
capital murder. In his second point of error, appellant contends the
evidence is legally and factually insufficient to show that he "acted
with a specific intent to kill Officer Posadas." In his third point of error,
appellant asserts the evidence is legally and factually insufficient to
show that he "knew that Officer Posadas was a peace officer acting in
the lawful discharge of his official duty at the time the officer was shot." 
Because these three points of error challenge the sufficiency of the
evidence, we will address them together.

 When we review the legal sufficiency of the evidence, we view all
the evidence in the light most favorable to the verdict to determine
whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 319 (1979); Patrick v. State, 906 S.W.2d 481, 486 (Tex.
Crim. App. 1995); Villarreal v. State, 865 S.W.2d 501, 503 (Tex.
App.--Corpus Christi 1993, pet. ref'd). The standard is the same for
both direct and circumstantial evidence cases. Earhart v. State, 823
S.W.2d 607, 616 (Tex. Crim. App. 1991); Vela v. State, 771 S.W.2d
659, 660 (Tex. App.--Corpus Christi 1989, pet. ref'd). We measure the
legal sufficiency of the evidence by the elements of the offense as
defined by the hypothetically correct jury charge. Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would
accurately set out the law, would be authorized by the indictment, and
would not unnecessarily increase the State's burden of proof. Id.

 When we review the factual sufficiency of the evidence, we review
all of the evidence and set aside the verdict only if it is so against the
overwhelming weight of the evidence that it is manifestly unjust and
clearly wrong. Clewis v. State, 922 S.W.2d 126,133-34 (Tex. Crim.
App. 1996). Under a factual sufficiency review, we are not bound to
view the evidence in the light most favorable to the prosecution. Stone
v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd). 
Rather, we are free to consider the testimony of all the witnesses. Id. 
The complete and correct standard for conducting a Clewis factual
sufficiency review of the elements of a criminal offense asks whether a
neutral review of the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to
undermine confidence in the jury's determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary
proof. See Johnson v. State, No. 1915-98, slip op. at 18, 2000 WL
140257, at *8 (Tex. Crim. App. Feb. 9, 2000).

 The jury, as the trier of fact, may use common sense and apply
common knowledge, observation, and experience gained in ordinary
affairs when giving effect to the inferences that may be reasonably
drawn from the evidence. Booker v. State, 929 S.W.2d 57, 60 (Tex.
App.--Beaumont 1996, pet. ref'd); Wawrykow v. State, 866 S.W.2d 87,
88 (Tex. App.--Beaumont 1993, pet. ref'd). As fact finder, the jury is
the exclusive judge of the credibility of witnesses and the weight to be
afforded their testimony. Chambers v. State, 805 S.W.2d 459, 461
(Tex. Crim. App. 1991). The jury is free to accept one version of the
facts, reject another, or reject all or any of a witness's testimony. 
Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981); Sills
v. State, 846 S.W.2d 392, 394 (Tex. App.--Houston [14th Dist.] 1992,
pet. ref'd). Simply because the defendant presents a different version
of the facts does not render the State's evidence insufficient. Anderson
v. State, 701 S.W.2d 868, 872 (Tex. Crim. App. 1985); Sills, 846
S.W.2d at 394.

 The elements for criminal attempt are: (1) a person (2) with intent
to commit an offense (3) does an act amounting to more than mere
preparation that tends but fails to effect the commission of the offense
intended. See Tex. Pen. Code Ann. § 15.01 (Vernon 1994). The elements
for capital murder are: (1) a person (2) intentionally or knowingly (3)
causes the death of an individual (4) that is a peace officer who is acting
in the lawful discharge of an official duty and (5) who the person knows
is a peace officer. See Tex. Pen. Code Ann. § 19.03(a)(1) (Vernon 1994).

 Officers Posadas and Hernandez arrived at Hubbard's apartment
in response to a disturbance call on the evening in question. As they
approached the door of the apartment, Posadas opened the metal
screen door and noticed the door was ajar about an inch. Testimony
from the officers, Page, and Mobley establishes that upon reaching
Hubbard's apartment, Officer Posadas knocked on the door to the
apartment and identified himself as a police officer. At the time, Officers
Posadas and Hernandez were both wearing the navy blue uniform of
the Port Lavaca Police Department. As the officers began to push the
door open a few inches and Posadas placed his foot in the door,
Hubbard said, "This man's got a gun." At that point, appellant reached
out the door with the gun. The gun was three to four inches from
Officer Posadas's face when appellant fired the weapon. The bullet,
fired from the weapon, struck to the left of Officer Posadas's nose
causing massive life threatening injuries. 

 This evidence, established from the testimony of Hernandez,
Posadas, Page, and Mobley, shows that appellant shot Officer Posadas,
an officer in the Port Lavaca Police Department. Evidence showing that
appellant pointed the gun at Officer Posadas and pulled the trigger
amounts to more than mere preparation. 

 We conclude the evidence is sufficient for the trier of fact to find
intent to kill and knowledge that Officer Posadas was a police officer. 
Evidence of the intent to kill can be shown by the discharge of a
weapon in the direction of people. See Tex. Pen. Code Ann. §
19.02(b)(2); Saenz v. State, 976 SW2d 314, 321 (Tex. App.--Corpus
Christi 1998, no pet.). In this case, appellant knew he was firing the
gun in the direction of the officers. More specifically, the gun was
discharged a few inches from Officer Posadas's face. There was also
evidence that appellant verbally acknowledged the presence of and
referred to the fact that he had to kill the police officers. Mobley
testified that when appellant recognized that the officers were outside
the door, appellant stated, "You see what you make me have to do, you
see, now I'm going to have to kill these mothers."(4)

 We conclude appellant knew (1) that Officer Posadas was a police
officer, and (2) that Officer Posadas was acting in his official duty in
response to Hubbard's telephone call for help. We further conclude the
evidence in the record is sufficient to allow a rational trier of fact to
believe beyond a reasonable doubt that appellant attempted to cause
the death of Officer Posadas by firing a gun three or four inches from his
face. We hold the evidence is legally sufficient to support appellant's
conviction.

 Furthermore, after considering all the evidence, we conclude the
verdict is not so against the overwhelming weight of the evidence that
it is manifestly unjust and clearly wrong. We also hold the evidence is
factually sufficient to support appellant's conviction. Appellant's first,
second, and third points of error are overruled.

3. Jury Charge


 By his fourth point of error, appellant complains that "the trial
court erred in failing to charge the jury on the issue of self-defense." 
Specifically, appellant contends that he was "in fear of his life" after
discovering and wrestling for the gun. He asserts that upon hearing
Hubbard's statement, "This man's got a gun," he could have assumed
another assailant with Page was getting ready to shoot him. 

 Upon a timely request, a defendant has the right to an instruction
on any defensive issue raised by the evidence, whether such evidence
is strong or weak, unimpeached or contradicted, regardless of what the
trial court may or may not think about the credibility of this evidence. 
Hamel v. State, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996); Miller v.
State, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991). A charge on a
defensive issue is required if the accused presents affirmative evidence
that would constitute a defense to the crime charged and a jury charge
is properly requested. Miller, 815 S.W.2d at 585. In fact, the trial court
must grant the defendant an instruction regardless of whether the issue
is raised by the defendant's testimony alone or otherwise. Id. If a
defendant produces evidence raising each element of a requested
defensive instruction, he is entitled to the instruction regardless of the
source and strength of the evidence. Hamel, 916 S.W.2d at 493;
Brazelton v. State, 947 S.W.2d 644, 646 (Tex. App.--Fort Worth 1997,
no pet.). When evidence from any source raises a defensive issue, and
the defendant properly requests a jury charge on that issue, the trial
court must submit the issue to the jury. Muniz v. State, 851 S.W.2d
238, 254 (Tex. Crim. App. 1993). Thus, if the issue is raised by any
party, refusal to submit the requested instruction is an abuse of
discretion. Id. When the evidence fails, however, to raise a defensive
issue, the trial court commits no error in refusing a requested
instruction. Id.

 To claim self-defense, a person must reasonably believe that the
deadly force is immediately necessary to protect himself or another from
the use of unlawful deadly force. See Tex. Pen. Code Ann. §§ 9.31, 9.32
(Vernon 1994). 

 When we review a jury charge for error, our first inquiry is
whether the alleged error was preserved. If so, any harm, regardless of
the degree, is sufficient to require reversal of the conviction. Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on State's
motion for rehearing). On the other hand, if no proper objection was
made at trial, the accused must claim and show that the error was
"fundamental" in order to obtain a reversal. Id. A reversal will be
granted only if the error is so egregious and created such harm that he
"has not had a fair and impartial trial" -- in short, "egregious harm." 
Id.; See Tex. Code Crim. Proc. Ann. § 36.19 (Vernon 1981).

 In this case, appellant did not object to the charge and, thus, failed
to preserve error. In order to obtain a reversal, he must show that the
error caused him egregious harm. Abdnor v. State, 871 S.W.2d 726,
732 (Tex. Crim. App. 1994). Egregious harm consists of errors affecting
the very basis of the case or that deprive the defendant of a valuable
right, vitally affect a defensive theory, or make the case for conviction
or punishment clearly and significantly more persuasive. Saunders v.
State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991). We determine
harm in light of the entire jury charge, the state of the evidence,
including contested issues and the weight of the probative evidence,
the argument of counsel, and any other relevant information revealed
by the record as a whole. Mann v. State, 964 S.W.2d 639, 641 (Tex.
Crim. App. 1998).

 The question then is whether the omission of the issue of self-defense from the jury charge in this case constitutes egregious harm. 
In his brief, appellant contends that: (1) he did not know there were
police officers at the door, (2) he reacted to Hubbard's statement "this
man's got a gun," and (3) he fired toward the door because he could
have assumed that another assailant with Page was getting ready to
shoot him.

 Appellant argues that the jury should have been charged on the
issue of self-defense and cites Rodriguez v. State, 544 S.W.2d 382 (Tex.
Crim. App. 1976) in support of his argument. Rodriguez reiterates the
law that if the issue of self-defense is raised by the evidence, the
accused is entitled to have it submitted to the jury. Id. at 383. 
However, this case is distinguishable from Rodriguez. In Rodriguez, the
appellant requested a self-defense jury charge, and the trial judge
denied the request. See id. In this case, there was no such request. 
A trial court has no duty to sua sponte charge the jury on unrequested
defensive issues raised by the evidence. Barrera v. State, 982 S.W.2d
415, 416 (Tex. Crim. App. 1998). Since appellant did not request a
charge on self-defense or object to the omission of self-defense in the
charge, the trial court has not committed error by failing to instruct the
jury on self-defense. See Posey v. State, 966 S.W.2d 57, 62 (Tex. Crim.
App. 1998).

 We hold the trial court's failure to charge the jury on the issue of
self-defense did not cause appellant egregious harm. Appellant's fourth
point of error is overruled.

4. Ineffective Assistance Of Counsel


 In his fifth point of error, appellant contends his trial counsel did
not provide him with effective assistance during the guilt-innocence and
punishment phases of the trial. Appellant claims that his attorney's
failure to ask the trial court to charge the jury on the issue of self-defense at the guilt-innocence phase, and his failure to raise the issue
of sudden passion at the punishment phase of the trial amounted to
ineffective assistance of counsel.

 The standard for ineffective assistance of counsel is set out in
Strickland v. Washington, 466 U.S. 668 (1984). This standard was
adopted by Texas in Hernandez v. State, 726 S.W.2d 53 (Tex. Crim.
App. 1986). The Strickland standard applies to ineffective assistance
of counsel at both the guilt-innocence and punishment phases of the
proceedings. Hernandez v. State, 988 S.W.2d 770 (Tex. Crim. App.
1999). A defendant seeking relief must demonstrate (1) that counsel's
performance failed to constitute reasonably effective assistance by
falling below an objective standard of reasonableness under prevailing
professional norms, and (2) that there is a reasonable probability that,
but for counsel's deficient performance, the result of the proceeding
would have been different. Strickland, 466 U.S. at 694; Hernandez, 726
S.W.2d at 55. A "reasonable probability" is defined as "a probability
sufficient to undermine confidence in the outcome." Strickland, 466
U.S. at 694; Ex parte Walker, 777 S.W.2d 427, 430 (Tex. Crim. App.
1989). Whether this standard has been met is to be judged by "the
totality of the representation." Ex parte Welborn, 785 S.W.2d 391, 393
(Tex. Crim. App. 1990).

 Our review of counsel's performance must be highly deferential. 
Strickland, 466 U.S. at 689; Garcia v. State, 887 S.W.2d 862, 880 (Tex.
Crim. App. 1994). The burden of proving ineffective assistance of
counsel is on the appellant and is one which requires proof by a
preponderance of the evidence. Stafford v. State, 813 S.W.2d 503, 506
n.1 (Tex. Crim. App. 1991); Moore v. State, 694 S.W.2d 528, 531 (Tex.
Crim. App. 1985); Cannon v. State, 668 S.W.2d 401, 403 (Tex. Crim.
App. 1984). An allegation of ineffective assistance of counsel will be
sustained only if it is firmly founded and if the record affirmatively
demonstrates counsel's alleged ineffectiveness. Ex Parte Williams, 634
S.W.2d 815, 819 (Tex. Crim. App. 1980). In determining whether trial
counsel rendered deficient performance, we employ a strong
presumption that counsel's conduct constitutes sound trial strategy. 
Strickland, 466 U.S. at 689; Miniel v. State, 831 S.W.2d 310, 323 (Tex.
Crim. App. 1992).

 Consistent with Strickland, we must presume that counsel is
better positioned than the appellate court to judge the pragmatism of
the particular case, and that he made all significant decisions in the
exercise of reasonable professional judgment. Delrio v. State, 840
S.W.2d 443, 447 (Tex. Crim. App. 1992); Moffatt v. State, 930 S.W.2d
823, 826-27 (Tex. App.--Corpus Christi 1996, no pet.). The record
must contain evidence of counsel's reasoning, or lack thereof, to rebut
that presumption. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim.
App. 1994). The constitutional right to counsel does not mean errorless
counsel or counsel judged ineffective by hindsight. Ex parte Carillo, 687
S.W.2d 320, 324 (Tex. Crim. App. 1985).

 Performance of counsel cannot generally be adequately examined
based on a trial court record. Kemp v. State, 892 S.W.2d 112, 115 (Tex.
App.--Houston [1st Dist.] 1994, pet. ref'd). A proper review should
focus on a record specifically targeting the conduct of trial counsel. Id. 
Such a record is best developed during a hearing on application for writ
of habeas corpus or motion for new trial. Id.; see Jackson, 877 S.W.2d
at 772 (Baird, J., concurring). To find that trial counsel was ineffective
based on a record silent as to why trial counsel conducted the trial as
he did would call for speculation, which we are not permitted to do. 
See id.; Lozada-Mendoza v. State, 951 S.W.2d 39, 42 (Tex.
App.--Corpus Christi 1997, no pet.).

 Appellant contends there was evidence of self-defense and that
his trial counsel should have raised it as an issue. Appellant cites
Rodriguez in support of his contention that he was entitled to submit
the issue of self defense to the jury. According to Rodriguez, if the issue
of self-defense is raised by the evidence, the accused is entitled to have
it submitted to the jury, regardless of the truth of the accused's
testimony. Rodriguez, 544 S.W.2d at 384. 

 Officer Hernandez testified that when he walked into the
apartment after the shooting occurred, he located appellant and the
gun, he pushed the gun out of the way and told appellant not to move. 
At this point, appellant asked Hernandez "who did I shoot?" Hernandez
replied that appellant had shot an officer. Appellant then said, "I didn't
know he was an officer." While this may appear to establish a self-defense claim, appellant, at most, has simply provided an argument
that he did not know that Posadas was a police officer rather than
establishing that his act of firing the weapon was necessary to protect
himself from the use of unlawful deadly force.

 At trial, the testimony of Page and Mobley contradicted appellant's
statement. Their testimony established that when appellant recognized
the police officers were outside the door, he said, "you see what you
make me have to do, you see, now I'm going to have to kill these
mothers." This statement, while establishing his knowledge of the
police officers, negates a claim of self-defense. Appellant was the
aggressor in this situation. Appellant caused this violent situation when
he demanded to see Page. 

 Appellant called Page at her house. He cussed at her and accused
her of sleeping with a former boyfriend. Appellant then demanded that
Page travel to Palacios to meet him. Page and Mobley went to
Hubbard's apartment in Port Lavaca. Appellant located them and
demanded entrance to the apartment. After Hubbard arrived, appellant
kicked in the door and began to hit Hubbard, Page, and Mobley with a
phone, his fists, and eventually the gun. Upon discovering that the
police officers were at the door, he reached out the door with the gun
in his hand and fired the weapon within three or four inches of Officer
Posadas's face. Officer Posadas testified that he did not have his gun
drawn as he attempted to push the door to the apartment open. Thus,
the evidence establishes that appellant, whether or not he knew the
individual was a police officer, reached out through the partially-opened
door and fired his weapon at a person who had not displayed a firearm
or any form of unlawful deadly force. We conclude the issue of self-defense was not raised by the evidence in this case.

 The evidence shows appellant was the aggressor and that he had
knowledge the people he shot at were police officers. We afford a
strong presumption that the trial attorney's actions fell within a wide
range of reasonable professional assistance. See McFarlane v. State,
928 S.W.2d 482, 500 (Tex. Crim. App. 1996). The presumption is that
the challenged action is a reasonable trial strategy absent any
contradicting evidence. See Cano v. State, 3 S.W.3d 99, 112 (Tex.
App.--Corpus Christi 1999, pet. ref'd). An allegation of ineffective
assistance of counsel will be sustained only if it is firmly founded and
if the record affirmatively demonstrates counsel's alleged
ineffectiveness. Strickland, 466 U.S. at 689; Miniel, 831 S.W.2d at 323.

 Because the issue of self-defense was not raised by the evidence,
trial counsel could not ask the trial court to charge the jury on the issue
of self-defense. Also, the appellant in this case filed an untimely motion
for new trial, and the trial court did not hold a hearing on the motion. 
Thus, there is no evidence in the record rebutting the presumption that
trial counsel's failure to ask the trial court to charge the jury on the issue
of self-defense was a reasonable trial strategy. 

 Appellant also contends he received ineffective assistance of
counsel at the punishment phase of the trial because his trial counsel
did not raise the issue of sudden passion to reduce the punishment. 
Appellant argues that his being upset about the possible infidelity of his
girlfriend, arguing with her at the apartment, finding a gun during the
melee at the apartment, and statements made in the apartment by
Mobley and Hubbard caused sudden passion to arise.

 Section 19.02 of the penal code defines sudden passion as
"passion directly caused by and arising out of provocation by the
individual killed or another acting with the person killed which passion
arises at the time of the offense and is not solely the result of former
provocation." Tex. Pen. Code Ann. § 19.02(2) (Vernon 1994). 
"'Adequate cause' means cause that would commonly produce a
degree of anger, rage, resentment or terror in a person of ordinary
temper, sufficient to render the mind incapable of cool reflection." Id.

 The law requires that the passion be directly caused by the
individual killed or another acting with that person. "The accused may
not rely upon cause of his own making, such as precipitating a
confrontation." Naasz v. State, 974 S.W.2d 418, 423 (Tex. App.--Dallas
1998, pet. ref'd) (citing Nance v. State, 807 S.W.2d 855, 861 (Tex.
App.--Corpus Christi 1991, pet. ref'd)).

 The record reflects that appellant was the aggressor in this case. 
He tracked down his girlfriend, kicked open the front door, and
assaulted the people in the apartment. Neither Page, Mobley, nor
Hubbard was shot by the appellant. The police officer had no
connection to the situation other than to respond to a call. Therefore,
appellant cannot claim sudden passion toward the police officer.

 Further, appellant had time for cool reflection as he took the time
to look for and find his girlfriend, kick open the front door, have at least
two altercations in the apartment, acknowledge the police presence,
and then discharge the weapon. Also, Hubbard's statement, "This
man has a gun," was directed to the police officers and not to appellant.

 As we previously stated, appellant filed an untimely motion for
new trial, and the trial court did not hold a hearing on the motion. 
Thus, there is no evidence in the record rebutting the presumption that
trial counsel's failure to bring up the issue of sudden passion was a
reasonable trial strategy. We must give deference to trial counsel's
decision to exclude the issue of sudden passion; raising the issue may
have caused counsel to act in a way inconsistent with his trial strategy.

 After reviewing the entire record, we hold appellant did not receive
ineffective assistance of counsel at trial. Appellant's trial counsel
actively participated in juror voir dire, diligently protected the interests
of his client by objecting to the evidence and testimony throughout the
trial, conducted lengthy and detailed cross-examinations, and
aggressively presented appellant's case before the jury. Appellant's
fifth point of error is overruled. 

 The judgment of the trial court is affirmed.


 FEDERICO G. HINOJOSA

 Justice



Do not publish. Tex. R. App. P. 47.3.


Opinion delivered and filed this the

24th day of August, 2000.


1. Tex. Pen. Code Ann. §§ 15.01, 19.03 (Vernon 1994).
2. Page testified that a month before this incident, appellant had held her and
Mobley hostage in a motel room.
3. Page testified that they were on their knees, hands behind their back, with
their foreheads to the ground.
4. Hernandez testified that after appellant found out he had shot Officer Posadas,
appellant stated, "I didn't know he was an officer." This statement contradicts
Mobley's testimony that appellant recognized the officers' presence. The jury,
however, was free to accept or reject any part of a witness's testimony. Penagraph
v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981).